# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

BRIAN K. BROWN,

                Petitioner,

     v.                                           Case No. 09-CV-723

JODINE DEPPISCH,

                Respondent.

_____

## ORDER

On July 23, 2009, Brian K. Brown ("Brown") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket #1). With the benefit of the parties' briefs, the court will resolve whether the writ should be issued with this order. The court begins by providing some background information.

A little over five years ago, Mr. Brown was tried in Polk County Circuit Court for violating Wis. Stat. § 948.02(1), first degree sexual assault of a child. In the one day trial, the prosecution introduced two witnesses – the victim and his mother – who testified that Mr. Brown, a cousin of the victim's mother, had grabbed the then-seven year old victim out of bed at night, carried him to a chair, and sexually assaulted the young boy. On cross-examination, the victim's testimony became far more hesitant and cloudy, as the petitioner's attorney, William R. Lamb ("Lamb"), – then Mr. Brown's fourth attorney to represent him[1] – asked several questions that raised an issue as to whether the boy had merely dreamed the assault. Mr. Lamb, however,

_____

[1] The record indicates that Mr. Brown had a total of seven attorneys representing him during the course of his criminal conviction and appeals.

opted to not raise an issue as to a series of prior inconsistent statements the victim had made with regard to the exact time of the assault, as Mr. Lamb feared that raising such issues during the cross-examination could open the door for discussion of a second sexual assault that the victim had alleged occurred, but was not the subject of the prosecution. The record indicates that when the prosecution rested, the defendant's attorney made several strategic decisions about the defense's case in chief.[2] Most importantly, the defendant's attorney decided that Mr. Brown's best chance for an acquittal was to argue that the victim's testimony was insufficient to conclude that a sexual assault occurred and, indeed, could lead to the contrary conclusion that the sexual assault was merely a dream of the boy. As a result of this strategy, Mr. Lamb opted to not call an expert witness to discuss potential problems with the interview techniques employed by the police, as the potential weaknesses with such testimony had the potential to overshadow the weaknesses with the testimony of the victim. Moreover, the petitioner's trial attorney chose not to present any evidence that showed that Mr. Brown had a dispute with the family over a thousand dollars, as such evidence, Mr. Lamb reasoned, would not credibly show a motive to conger up a false sexual assault accusation against the petitioner. Finally, Mr. Lamb opted to not present evidence that had the potential to indicate that

---

[2] The record with respect to Mr. Lamb's trial strategy are contained in his testimony during a hearing on a motion for new trial on October 18, 2006. Notably, Mr. Lamb summarized his strategy with the following testimony: "I felt . . . given how things had come in, that our best opportunity was to argue to the jury that . . . this young man is a fine young man and he's young . . . was confused and that this didn't really happen and that he may have been dreaming or he may have . . . been having some fanciful thoughts, but it didn't really happen." (Tr. Hearing on Mtn. for New Trial 11/18/06 at 22:9-18).

the victim's brother or his mother's boyfriend committed the sexual assault, as such evidence would cast doubt on the theory that the sexual assault was dreamt by the victim.

Unfortunately for the petitioner, Mr. Lamb's strategy was not a successful one, as the jury found the petitioner guilty of first degree sexual assault of a child. In the wake of the jury verdict, the petitioner, with the help of a new attorney, filed a motion for a new trial, arguing that Mr. Lamb's representation was constitutionally ineffective for a host of reasons.[3] However, the trial court, after holding an extensive hearing, concluded that Mr. Lamb's representation of the petitioner was not constitutionally deficient. Specifically, the trial court found Mr. Lamb's performance was not ineffective, as his trial tactics, while ultimately unsuccessful, amounted to a reasoned strategy and was not indicative of errant lawyering. Moreover, the trial court rejected that the defendant was somehow prejudiced by Mr. Lamb's actions, as there was a complete dearth of evidence that the defense attorney's decisions about juror strikes or what witnesses would testify for the defense would have had any impact on the

---

[3] Specifically, a review of the petitioner's state court motion for a new trial indicates that the central grounds raised with respect to the ineffective assistance of counsel claim were that Mr. Lamb: (1) had minimal contact with the defendant before and during trial; (2) had not vigorously engaged in pre-trial discovery, such as interviewing several witnesses; (3) did not explore the issue of a possible motive for the victim bringing an allegedly false complaint prior to trial and during trial; (4) did not call an expert witness to testify with regard to police interview techniques with respect to the victim; (5) did not demonstrate a full knowledge of the case, such as whether the defendant had prior convictions; (6) did not explore an issue of a conflict of interest with respect to the state prosecutor; (7) did not respect the wishes of the defendant to not be called as a witness; (8) did not explore inconsistencies with respect to the timing of the sexual assault; and (9) did not consult the defendant with regard to juror strikes. *See* Ex. B - Def.'s Mot. for a New Trial, 9/20/06.

jury's verdict. Ultimately, on February 16, 2007, the petitioner was sentenced to eight years of imprisonment followed by twenty years of extended supervision.

In May of 2007, Mr. Brown filed a notice of appeal, arguing again on appeal that Mr. Lamb's performance was deficient. The petitioner did not raise any issues in the appellate court other than through the lens of an ineffective assistance of counsel claim. The Wisconsin Court of Appeals, however, affirmed the decision of the trial court. Specifically, the appellate court, relying on a state procedural rule, began its decision by finding that of the host of issues regarding Mr. Lamb's ineffectiveness all but five of the issues were not properly before the appellate court because the defendant's appellate attorney had failed to interrogate Mr. Lamb during the trial court's hearing on the motion for a new trial. Moreover, with regard to Mr. Lamb's decisions to not raise issues at trial with respect to: (1) the victim's prior inconsistent statements; (2) the potential impropriety of the initial interview of the victim; (3) the potential motive of the victim's family to file a false report against Brown; and (4) the potential that someone else assaulted the victim, the Wisconsin Court of Appeals agreed with the trial court that the petitioner's trial attorney did not act deficiently. Finally, the appellate court concurred with the trial court's view that Mr. Lamb's alleged failings in preparing for trial, such as belatedly interviewing witnesses and examining relevant evidence, did not prejudice Mr. Brown in any way, as such failures did not alter the result of the trial.

The petitioner pressed on, filing a petition for review with the Wisconsin Supreme Court on April 10, 2008. However, the Wisconsin high court denied Mr.

Brown's petition for review in late July of 2008.   On July 23, 2009, Mr. Brown filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket #1).  His petition raises two extremely broad grounds for relief.  The court reviews each ground for relief in turn, but begins by briefly discussing the standards with respect to evaluating whether a federal court can grant a writ of habeas corpus under Section 2254.

As a person in custody pursuant to a state court judgment, to be eligible for a writ of habeas corpus Mr. Brown must demonstrate that he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).   Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant a habeas corpus application arising from a state court adjudication on the merits if the state court's decision:  (1) "was contrary to" or "involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding."  28 U.S.C. § 2254(d).  A state court's decision is "contrary to" federal law if the state court applied the wrong standard or decided a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Brown v. Finnan*, 598 F.3d 416, 421-22 (7th Cir. 2010).  Moreover, a state court's decision is an "unreasonable application of clearly established federal law" "when a state court identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either

unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply." *Id.* at 422. In other words, if the petitioner challenges a state court's application of governing federal law, the decision "must be shown to not only be erroneous, but objectively unreasonable." *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009) (internal citations omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). With these standards in mind, the court proceeds to examine each of the claims in Mr. Brown's petition.

The petitioner's first ground for relief is that he was denied "effective assistance of counsel" under the Sixth Amendment to the United States Constitution. The petition does not discuss how Mr. Brown's counsel was specifically ineffective and instead summarizes what the Wisconsin Court of Appeals ruled in his direct appeal. *Cf. United States v. Gregory*, 74 F.3d 819, 823 (7th Cir. 1996) (holding that one must "identify specific acts or omissions" that were deficient to establish an ineffective assistance of counsel claim). However, this court is obliged to give the petitioner's *pro se* allegations, however inartfully pleaded, a liberal construction, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and, accordingly, the court presumes that the petitioner is raising the same arguments Mr. Brown voiced in his motion for a new trial for why Mr. Lamb was ineffective.

From the outset, however, the court can eliminate all but five specific acts or omissions that were articulated in Mr. Brown's state court motion as points of discussion. The Wisconsin Court of Appeals did not rule on the merits of the bulk of Mr. Brown's myriad of reasons for why Mr. Lamb was ineffective because the trial attorney was never interrogated with respect to those issues. Under Wisconsin law, to preserve a claim of ineffective assistance of counsel, a defendant must ask counsel to explain his decisions so that a court can determine whether the conduct was the result of incompetence or a deliberate trial strategy. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). During the state court proceeding on the ineffective assistance of counsel issue, the petitioner's new attorney limited his questioning of Mr. Lamb to the trial attorney's efforts in interviewing witnesses and gathering evidence before trial and to Mr. Lamb's choices during the trial, including his decisions to: (1) not discuss the victim's prior inconsistent statements; (2) not have an expert testify with regard to potential issues with the police's initial interview of the victim; (3) not explore in testimony a possible motive the victim's family had to file a false report against Brown; and (4) not raise the issue of whether someone else committed the sexual assault.[4] Issues such as the decisions Mr. Lamb made during voir dire or whether the trial attorney should have more vigilently explored a plea bargain were never posed to Mr. Lamb, and,

---

[4] The testimony briefly touched on whether the prosecutor had a conflict of interest that should have been raised and whether the defendant's attorney shared a juror list with Mr. Brown. (Tr. of Hearing for Mt. for New Trial 10/18/06 at 39-41). However, none of these issues were even slightly credible reasons to suggest that Mr. Lamb's representation was deficient and, accordingly, were not even raised before the Wisconsin Court of Appeals.

accordingly, the state court of appeals determined that the petitioner had waived his right to assert such a claim pursuant to Wisconsin's procedural rules. Thus, the rejection of the bulk of the ineffective assistance of counsel claims by the state court of appeals rested on a ground that was both independent of the federal question and adequate to support the judgment, prohibiting this court from reaching the merits of such claims in this matter. *Coleman v. Thompson*, 501 U.S. 722, 729, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); *see also Gomez v. Jaimet*, 350 F.3d 673, 677 (7th Cir. 2003). The petitioner does not attempt to establish cause or prejudice in connection with this default nor does he show that a miscarriage of justice would result if the claim were not considered, and, accordingly, the court's discussion of the merits of the petitioner's ineffective assistance of counsel claim will be isolated to those matters discussed by the Wisconsin Court of Appeals. The court proceeds to discuss the merits of what remains of Mr. Brown's ineffective assistance of counsel ground for issuing the writ.

Pursuant to the very familiar standards promulgated by the Supreme Court of the United States, to successfully establish a denial of effective assistance, a criminal defendant must prove: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) he suffered prejudice as a result. *Strickland v. Washington,* 466 U.S. 668, 687-88, 693 (1984). To satisfy the first prong of the *Strickland* test, a criminal defendant must direct the court to specific acts or omissions of his counsel. *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000) (internal citations omitted). Self-serving and unsupported assertions will

not suffice to meet the petitioner's initial burden.  *United States v. Messino*, 55 F.3d 1241, 1253 (7th Cir. 1995); *see also Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991) ("Looking . . . at authority considering the requirement of a showing of prejudice in a claim of ineffective assistance of counsel, the party must present evidence, not mere conclusory allegations.").  The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the range of professionally competent assistance.  *United States v. Banks*, 405 F.3d 559, 569 (7th Cir. 2005).  The court's review of the counsel's performance must be "highly deferential . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  To satisfy the latter prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir. 1997).  "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006).  A court need not address both prongs of the *Strickland* test if one provides the answer; if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong.  *United States v. Fudge*, 325 F.3d 910, 924 (7th Cir. 2003) (internal citations omitted).

It is important to note, however, that in reviewing a state court's decision regarding a *Strickland* claim, this court's role is a very limited one.  As the Supreme Court recently discussed in *Harrington v. Richter*, 131 S. Ct. 770, 178 L. Ed. 2d 624

(2011), the standards "created by *Strickland* and § 2254(d) are both 'highly deferential' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (internal citations omitted). Indeed, "'only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010) (internal citations omitted). As a consequence, the ultimate question for the court with respect to Mr. Brown's first ground is "whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington,* 131 S. Ct. at 788 (emphasis added).

Applying these principles to the case at hand, the court can readily conclude that Mr. Brown's first ground for relief is without merit. Mr. Lamb's decision to not cross-examine the victim with regard to prior inconsistent statements was based on a reasoned decision that raising such issues would open the door to prejudicial information regarding other times that Mr. Brown allegedly sexually assaulted the victim. Moreover, the petitioner's trial attorney's choice of not calling an expert witness to discuss interview techniques of the victim by the police was rationally founded on the conclusion that such testimony would potentially cloud the issues in the case and detract from the weaknesses with the prosecution's case-in-chief. Additionally, the decision to not suggest that a thousand dollar dispute between the petitioner and the victim's family induced the family to conjure up a false accusation of sexual assault was a sound one, as such a suggestion strains credulity and had the potential to seriously erode the credibility of the defense in the minds of the jurors. It was also reasonable that Mr. Lamb opted to not accuse the victim's older

brother or the victim's mother's boyfriend of committing the sexual assault, as those accusations would have contradicted the theory that the sexual assault never occurred in the first place. Finally, the record amply demonstrates that the trial attorney's efforts before trial were more than sufficient, and Mr. Brown has not demonstrated that Mr. Lamb's choices to not interview certain witnesses or gather additional evidence would have changed the ultimate outcome of the trial.[5] In short, Mr. Lamb made a series of strategic decisions that in no way demonstrate a denial of the Sixth Amendment right to effective assistance of counsel. As the Seventh Circuit has repeatedly recognized, "trial strategies are generally left to the discretion of counsel and second-guessing strategic decisions in hindsight will generally not be a meritorious basis to find ineffective assistance of counsel." *Gentry v. Sevier*, 597 F.3d 838 (7th Cir. 2010). While Mr. Lamb's strategy was ultimately unsuccessful, this court cannot engage in "Monday Morning Quarterbacking" regarding the counsel's reasoned strategic choices in this case. *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990). As there are plenty of reasonable arguments "that counsel satisfied *Strickland*'s deferential standard," *Harrington,* 131 S. Ct. at 788, Mr. Brown's first ground for relief does not warrant issuing the writ. The court proceeds to address the petitioner's second ground for relief.

---

[5] Indeed, despite it being Mr. Brown's burden to prove that Mr. Lamb's performance was deficient, *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008), the petitioner did not even bother to submit a new brief to this court, instead opting to merely submit the brief his attorney provided to the Wisconsin Supreme Court in the petition for review. Of course, that brief did not discuss any *federal* habeas issues and was all but silent on the issue of prejudice.

Mr. Brown's second ground for relief is that he was denied his rights to "Due Process and Equal Protection . . . under the United States Constitution Fifth and Fourteenth Amendments." (Pet. at 8). As best as this court can tell from the supporting facts in the petition,[6] the petitioner is arguing that he was "denied adequate appellate review" in the Wisconsin state court system because they did not reject the state trial court's decision that Mr. Lamb's representation in this matter was constitutionally sufficient. This ground is the same as the first ground for relief and does not warrant further discussion. Accordingly, this court cannot conclude that there is any ground raised in Mr. Brown's petition that justifies issuing a writ of habeas corpus, and this case will be dismissed in its entirety.[7]

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

---

[6] Again, the petitioner never briefed the court on this issue, given that the petitioner merely resubmitted his state court briefs to support his federal habeas petition.

[7] The state interprets Mr. Brown's second ground for relief as an argument that the Wisconsin Supreme Court's decision to not take up the case amounted to a denial of the petitioner's constitutional rights. (Resp.'s Br. at 10-11). The court finds that this interpretation of Mr. Brown's petition is too generous, but agrees with the state that, even if that is the argument Mr. Brown is making, "there is no federal constitutional right to a second-tier appeal, let alone a due-process right to require a state supreme court to explain why it denied review." *Id.* at 11; *see also Ross v. Moffitt*, 417 U.S. 600, 611 (1974) ("[W]hile no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all.")

manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue, additional argument is not necessary here. Given the record before the court, no reasonable jurist would find it debatable whether this court was correct in its ruling on the present motion. As a consequence, the court must deny a certificate of appealability as to the petitioner's motion.

Accordingly,

**IT IS ORDERED** that the petitioner's "Petition for Writ of Habeas Corpus" (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to the petitioner's motion be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of July, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

-13-